[No. 11701. Department One. — October 6, 1887.]

# LEOPOLD GARTHE, RESPONDENT, v. JOHN W. HART ET AL., APPELLANTS.

| 73 | 541 |
|-----|------|
| 109 | 124 |
| 73 | 541 |
| 140 | 450 |

MINING CLAIM — PRIORITY BETWEEN LOCATIONS. — Where a prior location of a mining claim is valid, and the locators have kept it so by complying with the requirements of the mining laws, a subsequent location, however regular in form, is of no effect.

ID. — RIGHT OF POSSESSION — SUBSEQUENT LOCATION. — A party who is in the prior possession of a piece of mining ground is entitled to the possession as against a mere intruder, but not as against one who has subsequently located the same in compliance with the mining laws.

ID. — TRANSFER MUST BE IN WRITING. — Under section 1091 of the Civil Code a transfer of a mining claim must be in writing.

ID. — PAROL AGREEMENT AS TO BOUNDARY — ERECTION OF IMPROVEMENTS — ESTOPPEL — INSTRUCTIONS. — In an action of ejectment between conflicting locators to recover the possession of a mining claim, an instruction that the erection of improvements by the subsequent locator on the premises in dispute, in pursuance of a parol agreement between them establishing their boundary, would estop the prior locator from claiming contrary to the agreement, is erroneous, when there is no evidence that any such improvements were made under the agreement or otherwise.

APPEAL from a judgment of the Superior Court of Nevada County, and from an order refusing a new trial.

The facts are stated in the opinion.

*Cross & Simonds*, for Appellants.

*Johnson & Mason*, and *M. Farley*, for Respondent.

HAYNE, C. — Action of ejectment for a mining claim. Verdict and judgment for plaintiff. Defendants appeal.

1. The plaintiff gave evidence tending to show a location in 1881, and a subsequent location in 1884, the marking of the boundaries under these locations, and the recording of both claims. The statement does not show that one hundred dollars' worth of work was done each year, as required by the act of 1872; but this defect in the evidence is not referred to in the specifications.

The defendants gave evidence tending to show a valid

location in 1880, the recording of the claim as required by a local regulation, the marking of sufficient boundaries, and the performance of the requisite amount of work each year. There is no evidence in contradiction of this. And if it be-assumed that the plaintiff's proceedings were regular in all respects, it is manifest that the defendants had the earlier and better right. Where the first location is valid, and the parties have kept it so by doing what is required by the mining laws, a subsequent location, however regular in form, is of no effect. (*Belk* v. *Meagher*, 104 U. S. 284; *Rose* v. *Richmond Co.*, 17 Nev. 56, 57.) The verdict is therefore unsupported by the evidence.

2. The plaintiff gave evidence of an attempted location in 1879, and of acts tending to show a possession within the rule laid down in several cases. (See *English* v. *Johnson*, 17 Cal. 109; S. C., 76 Am. Dec. 574; *Table Mountain Co.* v. *Stranahan*, 20 Cal. 199; *Hess* v. *Winder*, 30 Cal. 349.) The court "struck out all evidence of this first location, for the reason that it appeared that the same had not been made in compliance with law." It does not clearly appear whether this order was in reference to the "location" merely, or whether it extended to the possession also. But we think the order was in reference to the location, because the non-compliance with the mining law would not be a reason for striking out evidence of the possession.

Without saying whether the acts done were sufficient to constitute a possession, we think the court erred in its charge to the jury with reference to it. The charge was as follows:—

" In order to make *a valid location* of mining claims the locator may adopt one of two courses. He may determine to locate his claim in accordance with law and customs. In order to get a title, a possessory title, in this way he must conform to the requirements of law. . . .

" As I said, there is still another way by which a miner in this state may acquire a right to the possession of a piece of mining ground.  It is *by taking possession of it and clearly defining the boundaries so that they may be readily traced, and holding such possession, keeping such possession.*"

In the hurry of the trial, the learned judge evidently overlooked the distinction between the right of a party in possession as against mere intruders, and his right as against one who has complied with the mining laws. Possession is good against mere intruders (*Attwood* v. *Fricot*, 17 Cal. 37; S. C., 76 Am. Dec. 567; *English* v. *Johnson*, 17 Cal. 115; S. C., 76 Am. Dec. 574; *Hess* v. *Winder*, 30 Cal. 355; *Golden Fleece Co.* v. *Cable Con. Co.*, 12 Nev. 321, 322); but it is not good as against one who has complied with the mining laws.  (*Du Prat* v. *James*, 65 Cal. 556, 557.)

We do not see that the error was cured by other portions of the charge.  What is claimed as curing the error is the following: " Another question presents itself in this case, which I will speak of shortly.  Plaintiff's claim in this case, so far as they are concerned, depends upon a location made by Mr. Penders and son in the year 1881, and a subsequent location made by Wiseman and others in 1884.  Of course if the location of defendants, to which I have already referred, was prior to that of plaintiffs, and they have complied with the requirements of the law since the date of that location, and the location itself was sufficient, no rights could be acquired by plaintiff *under the subsequent location.*"

This instruction points to the first ground of plaintiff's right of which the court had spoken.  It tells the jury, in substance, that if the defendants' location was prior to that of the plaintiff, and conformed to the requirements of the mining law, the plaintiff acquired no right " under the subsequent location."  But it does not say that the defendants' location would prevail over the

plaintiff's prior *possession*, which the court had already told the jury was one way in which the plaintiff could acquire a right to the premises in controversy. At most the charge was misleading; and we think the jury must have been misled by it.

3. There was evidence tending to show an adjustment of boundaries between the parties by oral agreement. With reference to this the court instructed the jury, at defendants' request, as follows:—

"The jury is instructed that no estate or interest in real property (except a lease for not more than one year), nor any trust or power over or concerning it, or in any manner relating thereto, can be created, granted, assigned, surrendered, or declared otherwise than by operation of law, or a conveyance or other instrument in writing subscribed by the party creating, granting, assigning, surrendering, or declaring the same, or by his lawful agent thereunto authorized by writing."

This was undoubtedly correct. Before 1860 a verbal transfer was held to be good when accompanied with a change of possession. (*Table Mountain etc. Co.* v. *Stranahan*, 20 Cal. 208; *King* v. *Randlett*, 33 Cal. 321.) In 1860 an act was passed with reference to gold mines (Laws 1860, p. 175), and afterwards extended to all mines (Laws 1863, p. 98), which was construed to do away with oral transfers. (See *Patterson* v. *Keystone Mining Co.*, 30 Cal. 363; *Goller* v. *Fett*, 30 Cal. 484, 485; *Felger* v. *Coward*, 35 Cal. 652.) Section 1091 of the Civil Code has been held to require a writing for the transfer of mining claims. (*Melton* v. *Lambard*, 51 Cal. 259, 260.)

The oral agreement, therefore, could not operate as a transfer. It seems to have been supposed, however, that what took place could have some effect by way of estoppel, and in this regard the court instructed the jury:—

"That if they believe from the evidence in this case that the location of John W. Hart and others was the first location, which was good according to law, that

afterwards said Hart, Englebright, and their lessees, and J. W. Penders and his grantees, had a dispute as to the boundary line of the claim of each, and that it was finally understood and agreed by all parties that the line claimed by Penders should be treated and considered as the true boundary line between the two mining claims, and that thereupon the grantees of said Penders went in good faith to work upon the land before in dispute, *and made improvements thereon* under such agreement and understanding, then I charge you that in determining the true boundary line between the parties you may consider such conversation and agreements, if any there was, for the purpose of determining the true boundary line between the mining claims of each party."

This was improper, — if for no other reason, because there was no evidence of any improvement made "under such agreement and understanding," or otherwise, and nothing which would give rise to an estoppel.

We therefore advise that the judgment and order be reversed, and the cause remanded for a new trial.

BELCHER, C. C., and FOOTE, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are reversed, and cause remanded for a new trial.